IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| PAULA WESTON, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>CREDIT ONE BANK, N.A., a National Association,<br><br>*Defendant*. | Case No. 2:15-cv-10168<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Paula Weston brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Credit One Bank, N.A. to stop its practice of making unsolicited telephone calls, specifically automated robocalls, to the cellular telephones of consumers nationwide, and to obtain redress for all persons injured by its conduct. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**NATURE OF THE ACTION**

1.      Defendant Credit One holds itself out as "one of America's leading issuers of . . . credit cards . . . to individuals who have been historically overlooked

1

by other banks because of their less than perfect credit."[1]

2. In an effort to collect allegedly outstanding payments on its credit offerings, Defendant made (and continues to make) widespread automated "robocalls" calls to consumers' cellular telephones (featuring prerecorded or artificial voices) to "remind" and persuade them to pay their bills.

3. Unfortunately, Defendant casted its net far too wide and placed collection calls to the cellular telephones of thousands of individuals who never consented to receive such calls at those specific telephone numbers, or worse, to individuals who didn't even have credit cards with Defendant and, as such, don't have outstanding debts to be collected by them.

4. Defendant obtained the telephone numbers called using practices known as "skip tracing"—locating an individual's number by searching through public and private databases—and "number trapping"—capturing numbers used to call Defendant and then adding those numbers to its database to be called in the future.

5. To make matters worse, once Defendant obtained an individual's phone number, it placed dozens of phone calls to the number, sometimes ten or more a day over a multi-week period.

6. Because Defendant made (and continues to make) unsolicited

---

[1] Frequently Asked Questions, Credit One Bank, N.A., https://www.creditonebank.com/faqs.aspx (last visited January 15, 2015).

robocalls to consumers' cellular telephones without prior express consent, it violated (and continues to violate) the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

7.  The TCPA was enacted to protect consumers from unsolicited and repeated telephone calls exactly like those alleged in this case. Defendant made these calls despite the fact that neither Plaintiff, nor the other members of a putative Class of consumers (defined below), ever provided Defendant with their prior express consent to be called. By making the phone calls at issue in this Complaint, Defendant caused Plaintiff and the other members of the Class actual harm, including the aggravation and nuisance that necessarily accompanies the receipt of unsolicited phone calls and the monies paid to their telephone carriers for the receipt of such calls.

8.  In response to Defendant's unlawful conduct, Plaintiff files the instant lawsuit seeking an injunction requiring Defendant to cease all unlawful calling activities, as well as an award of statutory damages to the members of the Class as provided under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

9.  Plaintiff Paula Weston is a natural person and citizen of the State of Michigan.

10. Defendant Credit One Bank, N.A. (Charter Number 20291) is a

National Association with its principal place of business located at 585 Pilot Road, Las Vegas, Nevada 89119. Credit One conducts business throughout this District, the State of Michigan, and the United States.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the TCPA, which is a federal statute. This Court has personal jurisdiction over Defendant because it conducts significant amounts of business transactions within this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

12. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant conducts significant amounts of business transactions within this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District. Venue is additionally proper because Plaintiff resides in this District.

## COMMON FACTUAL ALLEGATIONS

13. Defendant Credit One is one of the largest issuers of credit cards in the United States, specifically targeting individuals with lower than average credit.

14. When consumers become delinquent on their credit card payments or when payments are imminently due, Defendant attempts to collect such payments by, among other things, making repeated telephone calls to consumers' cellular

telephones featuring automated recordings—better known as robocalls.

15. Unfortunately, in Defendant's overzealous attempts to collect supposed debts, it placed (and continues to place) phone calls to cellular telephone numbers that consumers never provided consent to call, and to consumers that it had no relationship with and who were not holders of one of its credit cards, let alone debtors.

16. Defendant obtained their telephone numbers by using practices such as "skip tracing" and "number trapping." The issue with these practices is that skip trace reports often return contact information for individuals associated with the alleged debtor (*e.g.*, relative's or roommate's numbers, not the individual's) or, in certain cases, totally unrelated contact information. Likewise, number trapping captures incoming numbers and assigns them to an alleged debtor's account even if the incoming call is from, for example, a friend's telephone number.

17. Regardless of how it obtained consumers' telephone numbers, Defendant inputted the newly acquired contact information into its database and proceeded to place numerous, if not dozens, of calls to those numbers.

18. The non-debtors did not provide, nor could they have provided, their prior express consent to receive such calls. Likewise, the alleged debtors must provide actual prior express consent to receive calls at specific cellular telephone numbers called, and as such, numbers acquired from sources other than the

consumers themselves (or documents filled out by the consumers), do not meet the requisite consent standard.

19. Many of these supposed collection calls made by Defendant featured a prerecorded message, commonly known as a "robocall." This message informed the call recipient that it was an "important call" and that he or she should "stay on the line" to speak with a live agent. The prerecorded message plays after a long pause when the call recipient answers the phone, then he or she is put on hold, potentially never to be connected at all. If the call recipient is actually able to connect with a live person and inform them that Defendant has the wrong number and the wrong person, or that he or she did not consent to receive calls at that number, Defendant's callers persist in asking probing questions and repeatedly calling back.

20. Ultimately, neither Plaintiff nor the other members of the proposed Class ever provided the telephone numbers called to Defendant for the purpose of receiving collection calls. Further, neither Plaintiff, nor the other members of the putative Class, ever consented to receive these robocalls (or any other calls) at the telephone numbers called by Defendant.

## FACTS SPECIFIC TO PLAINTIFF WESTON

21. Starting in or around September 2014, Plaintiff Weston began receiving telephone calls on her cellular telephone from several numbers, including

but not limited to (855) 213-5764, (602) 282-1665, (866) 372-2508, and (210) 892-2189. Upon answering such calls, Plaintiff heard a prerecorded or artificial voice stating a message substantially similar to the message described in Paragraph 19 above. In certain instances, Plaintiff Weston heard a long pause after saying "hello" several times and would then hang up (or be disconnected). When Plaintiff called the number back she could not get past the initial menu because it required her to input the last four digits of a social security number associated with an account or debt (of which she had neither).

22. Eventually the calls became so numerous that she utilized a call blocking mobile phone application to stop them. Through this application, Plaintiff could determine that she was called over seventy-five times.

23. In or around October 2014, Plaintiff answered a call (that came from a new number) and was finally able to speak with a live person. At that time—and only after Plaintiff repeatedly pressed the caller for his identity—Defendant's representative explain that it was calling in search of a person named "Jeff." When Plaintiff informed the caller that she was not Jeff, Defendant's representative (a collections agent) aggressively questioned her about how long she has had her cell phone number and whether she knew anyone named Jeff that lived in her residence or who used that phone number. Plaintiff answered "no" to both questions as no one named Jeff did or had lived there and she has no relatives named Jeff.

7

24. Plaintiff does not have a credit card issued by Defendant and has no relationship with Defendant whatsoever. Plaintiff did not provide her cellular telephone number to Defendant or any of its agents, and as such, did not provide any form of consent to be called by Defendant or its agents.

25. As a result of Defendant's intrusive calls, Plaintiff's privacy rights were repeatedly violated and she suffered harm in the form of monies paid to her wireless carrier.

26. Defendant was and is aware that the above-described telephone calls were being made, and that the telephone calls were being made to consumers who had not consented to receive them.

## CLASS ALLEGATIONS

27. **Class Definition**: Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and a Class and Subclass of similarly situated individuals defined as follows:

> **Class**: All individuals in the United States: (1) who received a telephone call on his or her cellular telephone; (2) related to a credit card issued by Defendant Credit One Bank; (3) that featured an artificial or prerecorded voice; and (4) for which Defendant had no record of prior express consent to make such call(s) to the telephone number that received it.
>
> **Subclass**: All individuals in the United States: (1) who received a telephone call on his or her cellular telephone; (2) related to a credit card issued by Defendant Credit One Bank; (3) who do not have a credit card issued by Defendant (or any other business relationship with Credit One Bank); (4) that featured

an artificial or prerecorded voice; and (5) for which Defendant had no record of prior express consent to make such call(s) to the telephone number that received it.

The following people are excluded from the Class and Subclass (collectively referred to as the "Class," unless otherwise indicated): (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

28. **Numerosity**: The exact number of Class members is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant has made telephone calls to thousands of consumers who fall into the definition of the Class. Members of the Class can be identified through Defendant's records.

29. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class.

9

Common questions for the Class include, but are not necessarily limited to the following:

    (a)    whether Defendant's conduct violated the TCPA;

    (b)    whether Defendant made calls featuring an artificial or prerecorded voice;

    (c)    whether Defendant systematically made phone calls to persons who did not previously provide Defendant and/or its agents with their prior express consent to receive such phone calls; and

    (d)    whether Class members are entitled to treble damages based on the willfulness of Defendant's conduct.

30.    **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the members of the Class sustained damages arising out of Defendant's uniform wrongful conduct and unsolicited telephone calls.

31.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

32.    **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on

grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

33. **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy because joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision

by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

### FIRST CAUSE OF ACTION
### Violation of 47 U.S.C. § 227
### (On behalf of Plaintiff and the Class)

34. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

35. Defendant made unsolicited and unwanted telephone calls to cellular telephone numbers belonging to Plaintiff and the other members of the Class without their prior express consent.

36. Defendant made unsolicited telephone calls to telephone numbers belonging to Plaintiff and the other members of the Class using a prerecorded or artificial voice, more commonly known as a "robocall."

37. By making unsolicited robocalls utilizing an artificial or prerecorded voice to Plaintiff's and the Class's cellular telephones without prior express consent, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

38. As a result of Defendant's unlawful conduct, Plaintiff and the other members of the Class suffered actual damages in the form of monies paid to receive unsolicited calls and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in statutory damages for each violation of the TCPA.

39. Should the Court determine that Defendant's misconduct was willful and knowing, the Court may, pursuant to 47 U.S.C. § 227(b)(3)(C), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

40. Further, as a result of Defendant's unlawful conduct, Plaintiff and the other members of the Class are entitled to an injunction under 47 U.S.C. § 227(b)(3)(A), to ensure that Defendant's violations of the TCPA do not continue into the future.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Paula Weston, individually and on behalf of the Class and Subclass, prays for the following relief:

1. An order certifying the Class and Subclass as defined above, appointing Plaintiff Paula Weston as representative of the Class and Subclass, and appointing her counsel as Class Counsel;

2. An award of actual and statutory damages;

3. An injunction requiring Defendant to cease all unsolicited calling activities, and otherwise protecting the interests of the Class;

4. An award of reasonable attorneys' fees and costs; and

5. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

                                                     Respectfully submitted,

                                                     **PAULA WESTON**, individually and on behalf of all others similarly situated,

Dated: January 15, 2015        By: /s/ Ari J. Scharg
                                                      One of Plaintiff's Attorneys

                                                     Henry M. Scharg – P28804
                                                   hmsattyatlaw@aol.com
                                                   LAW OFFICE OF HENRY M. SCHARG
                                                   708 Ford Building
                                                   Detroit, Michigan 48226
                                                   Tel: 248.596.1111
                                                   Fax: 248.496.1578

                                                   Rafey S. Balabanian
                                                   rbalabanian@edelson.com
                                                   Ari J. Scharg
                                                   ascharg@edelson.com
                                                   Alicia E. Hwang
                                                   ahwang@edelson.com
                                                   EDELSON PC
                                                   350 North LaSalle Street, Suite 1300
                                                   Chicago, Illinois 60654
                                                   Tel: 312.589.6370
                                                   Fax: 312.589.6378